# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MASSACHUSETTS
# WESTERN DIVISION

| | |
|---|---|
| In re:<br><br>MODERN ALUMINUM ANODIZING CORPORATION,<br>            DEBTOR | Chapter 11<br>Case No. 07-40561-HJB |

## SECOND
## MOTION BY CHAPTER 11 TRUSTEE TO MODIFY CHAPTER 11 PLAN

### (EXPREDITED DETERMINATION REQUESTED)

Steven Weiss, the Chapter 11 Trustee in this case, through his counsel, and, pursuant to 11 U.S.C. § 1127(b), hereby moves that he be authorized to modify the Trustee's confirmed plan of reorganization, as set forth in more detail below. In support thereof, the parties respectfully states as follows:

1.    On February 15, 2007 Modern Aluminum Anodizing Corp. (the "Debtor") filed a petition for relief under Chapter 11 of the Bankruptcy Code with this Court.

2.    On February 8, 2008 the Court ordered the appointment of a Chapter 11 Trustee. On February 13, 2008 the Trustee was appointed in this case.

3.    A committee of unsecured creditors (the "Committee") has been appointed in this case.

4.    The matters set forth herein constitute core proceedings pursuant to 28 U.S.C. § 157(b)(2)(A).

5.    On or about July 25, 2008 the Trustee filed his Combined Disclosure Statement

and Plan of Reorganization (referred to herein as the "Plan") for the Debtor.

6. On September 3, 2008 the Court conducted a combined hearing on adequacy of disclosure and confirmation of the Plan. The Court found that the Trustee's Plan met all of the requirements for confirmation, and entered the confirmation order (the "Order") on September 4, 2008.

7. As set forth in more detail in the Plan and the Order, the Plan was to be effectuated by the sale of essentially all of the Debtor's assets to members of the Sigsbury family (the "Buyers", as defined in the Plan), for the sum of $1,500,000.00, plus assumption of certain liabilities. From the proceeds of the sale, T.D. Bank, N.A., the Debtor's secured creditor, would receive $1,262,500.00; $40,000.00 would be distributed to unsecured creditors; and the balance would be available to pay Chapter 11 administrative claims.

8. However, the Buyers were unable to consummate the Plan for a number of reasons.

9. When it became clear that the Buyers were unable to complete the Plan, the Trustee investigated a sale of the Debtor's assets to other parties.

10. As a result, on October 6, 2009, the Trustee filed a Motion to Modify Chapter 11 Plan (the "First Modification"), in which he sought to sell the Debtor's assets to Berkshire Anodizing, LLC or its nominee ("Berkshire"). The Court entered an order approving the First Modification on October 19, 2009.

11. As set forth in the First Modification, the essential terms of the sale to Berkshire are as follows: (a) The aggregate sale price is $1,080,000.00 (plus assumption of post-petition trade payables not to exceed $190,000 and real estate taxes and municipal charges owed to the City of North Adams), estimated to be $160,000.00; (b) The consideration to be paid as follows:

Berkshire provided a deposit of $25,000.00 to the Trustee; at closing, Berkshire will pay cash of $1,055,000; and (c) The sale is subject to Berkshire receiving an acceptable "21E" environmental report[1], subject to receiving financing from TD Bank, subject to the Trustee obtaining authority to have Berkshire manage the Debtor's business on an interim basis, subject to adjustment in the event that "good" accounts receivables dropped below $257,000,00 and subject to other usual contingencies, such as there being no material changes in the business.

12. The proceeds from the proposed sale were to be allocated as follows: (a) The Bank would receive payment of $900,000.00 from the cash proceeds; (b) $40,000.00 allocated to holders of allowed unsecured claims (the same as in the confirmed Plan); (c) $4,556.00 will be paid to the Massachusetts Department of Revenue on its priority claim (the same as in the confirmed Plan); (d) The cash held by the Trustee (currently approximately $61,000) and the remaining proceeds of the sale (which the Trustee anticipates will be approximately $135,000.00) for a total of approximately $196,000.00 would be available to pay allowed Chapter 11 administrative professional claims.[2] And (e) Arthur Grodd, the principal of Berkshire, will waive his "break up" fee upon closing.

13. Since that time, the Trustee and Berkshire have attempted to move expeditiously toward a closing. Berkshire did receive (albeit only recently) a commitment from TD Bank for the acquisition, and a closing had been tentatively scheduled for January 11, 2010. However, several serious problems have arisen.

14. First, a "Phase II" report dated December 18, 2009 indicates that the environmental problems associated with the Debtor's property are more serious than initially expected. The report estimates that the reporting and compliance costs will be approximately

---

[1] The Bank had at that time had recently obtained a "Phase I" report.

$69,000.00.

15. Second, the Debtor's business has continued to decline, to the extent that the accounts receivables are approximately $160,000.00, for which Berkshire is entitled to a reduction in the purchase price.

16. Third, the Trustee and Berkshire recently learned that one of the Debtor's major customers (which generates almost 20 percent of the Debtor's revenue) has announced that it is relocating its operations to China later this year. This may cause a significant drop in the Debtor's revenues. Berkshire has stated to the Trustee that this constitutes a "material adverse change" to the Debtor's business, and provides Berkshire the ability to cancel the sale agreement. However, Berkshire has indicated that it is still willing to complete a sale, albeit for a reduced amount.

17. The Trustee and Berkshire have agreed, subject to approval by this Court, to further modifications of the sale agreement (referred to herein as the "Second Modification"), as follows: (a) the aggregate sale price will be reduced to is $980,000.00 (again, plus assumption of post-petition trade payables not to exceed $190,000 and real estate taxes and municipal charges owed to the City of North Adams in the approximate amount of $160,000.00[3]); (b) at closing Berkshire will pay cash of $955,000; subject to credits of $15,000.00 to Berkshire for the management fees[4].

18. The proceeds from the proposed sale will be allocated as follows: (a) the Bank will receive payment of approximately $770,000.00 from the cash proceeds[5]; (b) $40,000.00 will

---

[2] The Trustee estimates that these claims (including fees and expenses incurred by the Trustee and his counsel) will be approximately $290,000.00 by the closing.
[3] On information and belief, the taxes and municipal charges are currently approximately $176,000.00.
[4] Under the terms of a motion filed by the Trustee and approved by the Court, Berkshire is entitled to monthly management fees of $7,500.00; the figure above represents a partial discounting of those fees.
[5] Of this amount, $25,000.00 will be held in escrow by Berkshire's counsel for 60 days, to ensure a 95% collection rate on the accounts receivables; pursuant to ¶ 1.4 of the Sale Agreement, this amount was initially $50,000.00.

be allocated to holders of allowed unsecured claims (the same as in the confirmed Plan); (c) $4,556.00 will be paid to the Massachusetts Department of Revenue on its priority claim (the same as in the confirmed Plan); (d) approximately $17,000 will be paid for real estate taxes that have accrued since the First Modification was allowed; (e) the Trustee will pay $43,000.00 toward environmental cleanup costs, in exchange for which Berkshire will indemnify and hold harmless the estate from any further claims related to the environmental conditions at the Property; and (f) the cash held by the Trustee (currently approximately $61,000), any cash remaining in the Debtor's account, and the remaining proceeds of the sale (which the Trustee anticipates will be approximately $97,000.00) will be available to pay allowed Chapter 11 administrative professional claims.

19. As set forth above, the Second Modification results in less payment to the Bank and to administrative professional claims, and a partial discounting of Berkshire's management fees, but does not affect the payment of priority and unsecured claims.

20. Pursuant to Bankruptcy Code §1127(b), a confirmed plan may be amended if the existing plan has not been consummated, and if the amended plan complies with the relevant provisions of Chapter 11, e.g., §1129. The Trustee believes that the proposed amended Plan satisfies those requirements.

21. The Trustee further believes that this motion provides sufficient information about the proposed modifications to satisfy Bankruptcy Code §§1125 and 1127(c).

22. The Trustee believes that the Bank assents to the proposed modifications to the Plan.

23. The Trustee further believes that modification of the Plan is essential, for the reasons set forth above. Berkshire is the only party currently interested in acquiring the Debtor's

assets. The Trustee believes that if the Plan is not modified, and Berkshire cancels the sale, it is likely that the Debtor's case will be converted to a Chapter 7 liquidation. The Debtor has obtained an estimate that the costs of shutting down the Debtor's anodizing facility in compliance with applicable environmental laws would approximate $250,000.00. Thus, were the case to be converted, the Trustee would likely abandon the Debtor's property on an emergency basis. In addition, the closure of the facility would result in the termination of approximately 40 jobs.

24. Given the exigencies of the situation, the Trustee requests that the 10 day stay established by Bankruptcy Rule 6004(h) be waived so that the sale can take place expeditiously.

**REQUEST FOR EXPEDITED DETERMINATION**

25. Pursuant to MLBR 9013-1, the Trustee requests an expedited determination of this Motion, and that the Court schedule a hearing on this Motion for January 20, 2010 in Springfield..

26. As set forth above, Berkshire has received its financing commitment, and the closing has been rescheduled for January 26, 2010. The Trustee believes that it is imperative to consummate the sale as soon as possible to avoid further erosions of the Debtor's business.

27. As further grounds for this request, the Trustee states that the amended Plan proposed by the Trustee will have no adverse effect on unsecured or priority creditors. There will be a reduction in the funds available for administrative professional claims, but the alternative, i.e., conversion of the case, would result in virtually no payment for Chapter 11 administrative professionals. The amended Plan contemplates a reduced payment to TD Bank,

which has agreed to the reduction.

WHEREFORE, the Trustee respectfully prays:

1. That this Court adjudicate this motion on an expedited basis;

2. That the Court authorize the Trustee to amend the Plan, as described herein; and

3. For such further relief as this Court deems just and proper.

Respectfully submitted this 13th day of January, 2010.

STEVEN WEISS, TRUSTEE

By: /s/ Steven Weiss, Esq.
Steven Weiss, Esquire
BBO# 545619
Shatz, Schwartz and Fentin, P.C.
1441 Main Street, Suite 1100
Springfield, MA  01103
(413) 737-1131

08\0092\Plan of Reorganization\Plan (Amended)\Motion.Modify.Plan.1601